IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE SYLVERNE, and | ) | |
| ALMA DAVIS, | ) | |
| on behalf of plaintiffs and a class, | ) | |
| | ) | Case No. 08 C 875 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Norgle |
| | ) | Magistrate Judge Cole |
| MIDLAND FUNDING NCC-2 CORP., | ) | |
| MIDLAND FUNDING LLC, | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| and ENCORE CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT**

Defendant Midland Funding LLC ("MFLLC" or "Defendant"), by its undersigned attorneys,

for its Answer and Affirmative Defenses to Plaintiffs' Complaint, states as follows:

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1.      Plaintiffs Stephanie Sylverne and Alma Davis bring this action to secure redress against unlawful credit and collection practices engaged in by defendants Midland Funding NCC-2 Corporation ("NCC"), Midland Funding LLC ("MFLLC), Midland Credit Management, Inc. ("MCM"); and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. ("Encore"). Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and state law.

**ANSWER:**    Defendant admits that Plaintiffs purport to state a claim and seek relief under the

FDCPA.  Further answering, Defendant denies that it violated the FDCPA and denies that it engaged

in any collection practices, unlawful or otherwise.  Further answering, Defendant denies that

Plaintiffs are entitled to the relief sought in the Complaint or any relief whatsoever from Defendant.

481848.11

Further answering, Defendant denies the remaining allegations contained in this paragraph and any

allegation that is contrary to the foregoing.

2.     The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

**ANSWER:**     Defendant states that the allegations contained in this paragraph are legal conclusions

to which no response is required.  Further answering, to the extent that a response is required,

Defendant denies the allegations contained in this paragraph.

3.     Plaintiffs complain of the systematic filing of perjured affidavits in state court collection lawsuits for the purpose of obtaining the ministerial entry of default judgments. The fraudulent nature of the affidavits is shown by the fact that two affidavits filed in two unsuccessful state court lawsuits filed against plaintiff Sylverne concerning the same debt contained patently inconsistent information.

**ANSWER:**     Defendant admits that Plaintiffs purport to state a claim and seek relief under the

FDCPA.  Further answering, Defendant denies that it violated the FDCPA and denies that it engaged

in any collection practices, unlawful or otherwise.  Further answering, Defendant denies that

Plaintiffs are entitled to the relief sought in the Complaint or any relief whatsoever from Defendant.

Further answering, Defendant denies the remaining allegations contained in this paragraph and any

allegation that is contrary to the foregoing.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1367 and 15 U.S.C. §1692k (FDCPA).

**ANSWER:**     Defendant admits that the Court has jurisdiction over this action.

5.     Venue and personal jurisdiction over defendant in this District is proper because defendants' collection actions occurred here.

-2-

**ANSWER:**     Defendant denies that it engaged in any collection practices, unlawful or otherwise, in this District.  Notwithstanding, Defendant states that it does not contest venue or jurisdiction. Further answering, Defendant states that arbitration may be the more appropriate venue in which to bring this action as Defendant may possess certain rights to move this action to arbitration based on contracts entered into by Plaintiffs.

## PARTIES

### Plaintiffs

6.     Plaintiff Stephanie Sylverne is an individual who resides in the Northern District of Illinois.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

7.     Plaintiff Alma Davis is an individual who resides in the Northern District of Illinois.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

### Midland Funding NCC-2 Corporation

8.     Defendant Midland Funding NCC-2 Corporation ("NCC") is a Delaware corporation. Its principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123. Its address for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**     Upon information and belief, Defendant admits the allegations contained in the first and second sentences of this paragraph.  Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph and, therefore, neither admits nor denies the same.

-3-

9.    Defendant NCC is in the business of taking title to charged-off debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

**ANSWER:**    Upon information and belief, Defendant admits that Defendant Midland Funding NCC-2 Corporation is in the business of taking title to charged-off debts allegedly owed by consumers and originally owed to others.  Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation "for a small fraction of face value" and, therefore, neither admits nor denies the same.  Further answering, upon information and belief, Defendant denies the remaining allegations contained in this paragraph.

10.    Defendant NCC has been the plaintiff in more than 1,000 collection actions against Illinois residents.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

11.    Defendant NCC is a "debt collector" as defined in the FDCPA.

**ANSWER:**    Upon information and belief, Defendant admits that Defendant Midland Funding NCC-2 Corporation may be considered a debt collector, as defined by the FDCPA, for some purposes.  Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Defendant Midland Funding NCC-2 Corporation was acting as a debt collector, as defined by the FDCPA, with respect to Plaintiffs and, therefore, neither admits nor denies the same.  Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

12.    Defendant NCC transacts business in Illinois.

**ANSWER:**    Upon information and belief, Defendant denies that Defendant Midland Funding NCC-2 Corporation does or transacts business in Illinois

-4-

481848.1

13.    On information and belief defendant NCC has no employees.

**ANSWER:**    Upon information and belief, Defendant admits the allegations contained in this

paragraph.

### Midland Funding LLC

14.    Defendant Midland Funding LLC ("MFLLC") is a limited liability company chartered
under Delaware law. Its principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA
92123. Its address for service of process is Corporation Service Company, 2711 Centerville Road,
Suite 400, Wilmington, DE 19808.

**ANSWER:**    Defendant admits the allegations contained in the first and second sentences of this

paragraph.  Further answering, Defendant admits that its agent for service of process is Corporation

Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.  Further answering,

Defendant denies the remaining allegations contained in this paragraph.

15.    Defendant MFLLC is in the business of taking title to charged-off debts allegedly
owed by consumers, including large amounts of credit card debts, for a small fraction of face value
and enforcing the debts against the consumers.

**ANSWER:**    Defendant admits that it is in the business of taking title to charged-off debts allegedly

owed by consumers and originally owed to others.  Further answering, Defendant is without

knowledge or information sufficient to form a belief as to the truth of the allegation "for a small

fraction of face value" and, therefore, neither admits nor denies the same.  Further answering,

Defendant denies the remaining allegations contained in this paragraph.

16.    Defendant MFLLC has been the plaintiff in more than 2,000 collection actions against
Illinois residents.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

17.    Defendant MFLLC is a "debt collector" as defined in the FDCPA.

-5-

481848.1

**ANSWER:**    Defendant admits that it may be considered a debt collector, as defined by the FDCPA, for some purposes.  Further answering, Defendant denies that it was acting as a debt collector, as defined by the FDCPA, with respect to Plaintiffs.  Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

18.    Defendant MFLLC transacts business in Illinois.

**ANSWER:**    Defendant denies that it does or transacts business in Illinois.

19.    On information and belief defendant MFLLC has no employees.

**ANSWER:**    Defendant admits the allegations contained in this paragraph.

### Midland Credit Management

20.    Defendant MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123. MCM transacts business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

**ANSWER:**    Upon information and belief, Defendant admits the allegations contained in the first sentence of this paragraph.  Further answering, upon information and belief, Defendant admits that Defendant Midland Credit Management, Inc. does business in Illinois but only and exclusively through the means of interstate commerce. Further answering, upon information and belief, Defendant denies that Defendant Midland Credit Management, Inc. has an office in Illinois.

21.    Defendant MCM is a collection agency and collects the charged-off debts held in the names of NCC, MFLLC and other subsidiaries of Encore (described below).

**ANSWER:**    Upon information and belief, Defendant admits that Defendant Midland Credit Management, Inc. is a debt collector for debts purchased by its affiliates, including Defendant and

Midland Funding NCC-2 Corporation. Further answering, Defendant denies the remaining allegations contained in this paragraph.

22.     Defendant MCM is a "debt collector" as defined in the FDCPA.

**ANSWER:**     Upon information and belief, Defendant admits that Defendant Midland Credit Management, Inc. may be considered a debt collector, as defined by the FDCPA, for some purposes. Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Defendant Midland Credit Management, Inc. was acting as a debt collector, as defined by the FDCPA, with respect to Plaintiffs and, therefore, neither admits nor denies the same. Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

**Encore**

23.     MCM, MFLLC and NCC are under common ownership. Both [*sic*] are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**ANSWER:**     Defendant admits the allegations contained in this paragraph.

24.     Encore describes itself as "a leading accounts receivable management firm" and a "purchaser and manager of charged-off consumer receivables portfolios." (Form 8- K filed by Encore with the SEC on March 3, 2005).

**ANSWER:**     Defendant states that the referenced Form 8-K is a written document that speaks for itself and, therefore, denies any and all allegations contained in this paragraph that are contrary to the terms of that writing.

25.     On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios." (Form 8-K filed by Encore with the SEC on March 10, 2005).

-7-

**ANSWER:**    Defendant states that the referenced Form 8-K is a written document that speaks for

itself and, therefore, denies any and all allegations contained in this paragraph that are contrary to the

terms of that writing.

26.    Encore "acquires its receivable portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2006, original p. E). By "deep discount" is meant 3.0 to 3.36% of face value. (*Id.,* original p.28).

**ANSWER:**    Defendant states that the referenced Form 10-K is a written document that speaks for

itself and, therefore, denies any and all allegations contained in this paragraph that are contrary to the

terms of that writing.

27.    Encore states that it is responsible for developing collection strategies. Thus, on March 3, 2005, Encore stated to public investors that:

> Our fourth quarter performance capped a very strong year for Encore, as we generated record levels of collections, revenues, and earnings per share …. We were able to achieve this strong growth despite scaling back on our purchasing of new portfolios throughout much of 2004 in response to less attractive pricing in the marketplace. Total purchases during 2004 were $103.4 million compared to $89.8 million in 2003. We continue to effectively develop alternative collection channels, such as legal and agency outsourcing, which increase our ability to penetrate our portfolios further…

The statement was made by Carl C. Gregory, III, then-Vice Chairman and CEO of Encore Capital Group, Inc. (Form 8-K filed by Encore with the SEC on March 3, 2005).

**ANSWER:**    Defendant states that the referenced Form 8-K is a written document that speaks for

itself and, therefore, denies any and all allegations contained in this paragraph that are contrary to the

terms of that writing.

28.    Encore is also responsible for raising money to purchase the charged-off debts.

**ANSWER:**    Defendant admits that Defendant Encore Capital Group, Inc. secures funds from

investors and lenders for the purpose of purchasing debts to which various subsidiaries and affiliates

of Encore take title.  Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

29.     Encore has various subsidiaries and affiliates, such as NCC and MFLLC, take title to the debts it purchases.

**ANSWER:**    Defendant admits that Defendant Encore Capital Group, Inc. secures funds from investors and lenders for the purpose of purchasing debts to which various subsidiaries and affiliates of Encore take title, including Defendant and Midland Funding NCC-2 Corporation.   Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

30.     On March 3, 2005, Encore CEO Gregory stated in an earnings conference call:

> It's notable that we achieved this strong growth despite scaling back on our purchases of new portfolios for the better part of 2004, because of a less attractive pricing environment. As we have mentioned many times, one of our competitive advantages is our varied business model that makes use of several different collection channels. During the fourth quarter we continued to see increased production out of our legal channel and our contingent agency outsourcing channel, which was developed earlier in 2004. For the full year, our collections through alternative channels, with the exception of the sales channel, more than doubled.

> Turning to the purchasing market, our purchases for the first three quarters of the year were relatively modest, because of what we deemed to be a lack of opportunities that met our high standards. The market continues to be highly competitive, and it's looking like it could remain that way for quite a while. Accordingly, we have adjusted our strategy to reflect the current environment. We determined that we should not bypass profitable opportunities simply because they' could not generate the high level of returns we have typically demanded, there are sufficient opportunities to purchase portfolios that can be nicely profitable for the Company. And in the current environment, it's in our best interest to acquire these portfolios rather than waiting for prices to come down.

> With that being said, we invested $46.1 million in new portfolios in the fourth quarter, at an average purchase price of 3.86 percent of face value. Almost all of these purchases were credit card portfolios and that's where

481848.1

we found the most attractive opportunities in the fourth quarter. These purchases were made with our former credit facility that expired at the end of the year. We were able to modify the terms of that credit facility during the fourth quarter, to put a ceiling on the total interest that we will have to pay on these portfolios. The lower interest expense associated with these portfolios will help offset the higher prices, and the resulting lower collection multiples and enable these portfolios to still generate nice profits for the Company.

**ANSWER:**    Defendant states that the excerpt of a statement quoted in this paragraph is written document that speaks for itself and, therefore, denies any and all allegations contained in this paragraph that are contrary to the terms of that transcript.

31.    On August 3, 2004, Encore CEO Gregory stated in another earnings call:

We believe our business model is especially well-suited to this changing environment. Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.

The keystone to everything we do is customer-level analytics -- understanding the individual customer and his changing ability to pay. Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay. We are always asking the same question -- can this particular customer pay us all or some of what he owes now? By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off. In this process, a score is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.

The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectibility score of each customer. In other words, to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.

We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance

-10-

transfer, external legal, and our recently developed agency outsourcing strategy.

**ANSWER:**    Defendant states that the excerpt of a statement quoted in this paragraph is written document that speaks for itself and, therefore, denies any and all allegations contained in this paragraph that are contrary to the terms of that transcript.

32.    Encore's involvement in the collection process is such as to make it a "debt collector" as defined in the FDCPA.

**ANSWER:**    Upon information and belief, Defendant denies the allegations contained in this paragraph.

33.    All of the defendants herein are under common control as well as ownership, with common or overlapping officers and directors.

**ANSWER:**    Defendant admits that it and Defendant Midland Funding NCC-2 Corporation and Defendant Midland Credit Management Inc. are subsidiaries of Defendant Encore Capital Group, Inc.  Further answering, Defendant denies the remaining allegations contained in this paragraph.

## FACTS RELATING TO PLAINTIFF SYLVERNE

### 2006 lawsuit

34.    On or about Feb. 23, 2006, defendant Midland Funding NCC-2 Corp., represented by the Blatt, Hasenmiller law firm, filed a complaint and attached documents in the Circuit Court of DuPage County, Illinois against plaintiff Sylverne, seeking to collect a credit card debt allegedly incurred for personal, family or household purposes. A copy of the complaint, which sought $2,086.11, and accompanying documents, including a "Form 409" affidavit, is in Exhibit A.

**ANSWER:**    Defendant states that the referenced Exhibit A is a document that speaks for itself and denies each and every allegation contained in this paragraph that is contrary to the terms of that writing.  Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that the debt was incurred for personal, family or household purposes and, therefore, neither admits nor denies the same.

-11-

481848.1

35.    The "form 409" affidavit, executed by one Nancy Vanzee, an employee of MCM, states:

a.    "I make the statements herein based upon my personal knowledge."

b.    "That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of all relevant financial information concerning Midland Credit Management, Inc's account number 8510S03348", including ...";

c.    "that the defendant did fail to make payments on the account";

d.    "That the final statement of account reveals that the defendant owed a principal balance of $2,086.11 on 2005-12-27; and that such balance will continue to earn interest at a rate of _____% as an annual percentage rate calculated as required by the [F]ederal Truth [I]n Lending Act, until judgment is entered herein .... I affirm that the final statement of account is true and correct."

e.    That "defendant has, in all things, failed or refused to make payments as demanded by plaintiff."

**ANSWER:**    Defendant states that the referenced "form 409" affidavit is a document that speaks for itself and denies each and every allegation contained in this paragraph that is contrary to the terms of that writing.

36.    On information and belief, MCM directed or caused the filing of the lawsuit.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

37.    The lawsuit was dismissed in July 2006 after Ms. Sylverne paid an appearance fee, retained counsel, and moved to dismiss the complaint.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

-12-

## 2007 lawsuit

38.    On or about Oct. 29, 2007, defendant Midland Funding NCC-2 Corp., this time represented by another collection law firm, Adler & Associates, filed another complaint and attached documents in the Circuit Court of DuPage County, Illinois against plaintiff Sylverne, seeking to collect the same credit card debt as the 2006 lawsuit. A copy of the 2007 complaint, which sought $2,817.39, and accompanying documents, including a "Form 409" affidavit, is in <u>Exhibit B</u>.

**<u>ANSWER:</u>**    Defendant states that the referenced Exhibit B is a document that speaks for itself and

denies each and every allegation contained in this paragraph that is contrary to the terms of that

writing.  Further answering, Defendant is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in this paragraph and, therefore, neither

admits nor denies the same.

39.    This "form 409" affidavit attached to the 2007 complaint, executed by one Amy Berschelt, another employee of MCM, states:

    a.    "I make the statements herein based upon my personal knowledge."

    b.    "That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc's account number 8510S03348", including ...";

    c.    "that the defendant did fail to make payments on the account";

    d.    "That the final statement of account reveals that the defendant owed a principal balance of $2,794.32 on 6/30/2000; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the [F]ederal Truth [I]n Lending Act, until judgment is entered herein .... I affirm that the final statement of account is true and correct."

    e.    That "defendant has, in all things, failed or refused to make payments as demanded by plaintiff."

**ANSWER:**    Defendant states that the referenced "form 409" affidavit is a document that speaks for itself and denies each and every allegation contained in this paragraph that is contrary to the terms of that writing.

40.    On information and belief, MCM directed or caused the filing of the 2007 lawsuit.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

41.    The 2007 lawsuit was dismissed in January 2008 after Ms. Sylverne paid an appearance fee and retained counsel.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

42.    The statements in the 2006 "Form 409" that the "final statement of account" showed that Ms. Sylverne owed a principal balance of $2,086.11 on December 12, 2005 and upon the Feb. 23, 2006 filing of the 2006 lawsuit, and that she had failed or refused to make payments, is not consistent with the statements in the 2007 "Form 409" that Ms. Sylverne owed $2,794.32 on June 30, 2000, and that she had failed or refused to make payments.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

43.    The discrepancy cannot be accounted for by any payments.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

44.    On information and belief, the "Form 409" affidavits are signed by MCM employees who have no personal knowledge of anything.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

45.    The statements in the 2007 "Form 409" affidavit filed against Sylverne that the affiant "make[s] the statements herein based upon my personal knowledge" is false.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

-14-

## FACTS RELATING TO PLAINTIFF DAVIS

46.    In October 2007, plaintiff Davis received by mail a motion for the entry of judgment on the basis of the complaint and "Form 409" affidavit attached as Exhibit C.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

 Further answering, Defendant states that the referenced Exhibit C is a document that speaks for

itself and denies each and every allegation contained in this paragraph that is contrary to the terms of

that writing.

47.    The lawsuit had been filed by MFLLC a year earlier but has never (to this day) been properly served on Davis.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

48.    A return of service was filed in March 2007 purporting to show substituted service on some person who Davis has never been able to identify and who was not a member of Davis' household.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

49.    The lawsuit and motion sought to collect a credit card debt allegedly incurred for personal, family or household purposes.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

50.    The "Form 409" affidavit, executed by one Bernice Thell, an employee of MFLLC, states:

      a.    "I make the statements herein based upon my personal knowledge. "

      b.    "That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of all relevant

-15-

481848.1

financial information concerning Midland Credit Management, Inc's account number 8511280025", including ...";

c.     "that the defendant did fail to make payments on the account";

d.     "That the final statement of account reveals that the defendant owed a principal balance of $4,826.33 on 2004-02-24; and that such balance will continue to earn interest at a rate of _____% as an annual percentage rate calculated as required by the [F]ederal Truth [I]n Lending Act, until judgment is entered herein .... I affirm that the final statement of account is true and correct."

e.     That "defendant has, in all things, failed or refused to make payments as demanded by plaintiff."

**ANSWER:**     Defendant states that the referenced "form 409" affidavit is a document that speaks for itself and denies each and every allegation contained in this paragraph that is contrary to the terms of that writing.

51.     On information and belief, MCM directed or caused the filing of the lawsuit.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

52.     On information and belief, the "Form 409" affidavits are signed by MCM employees who have no personal knowledge of anything.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

53.     The statements in the "Form 409" affidavit filed against Davis that the affiant "make[s] the statements herein based upon my personal knowledge" is false.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

54.     Ms. Davis was required to retain counsel to quash the purported service and oppose the entry of judgment, which was done in November 2007. Since that time the lawsuit has languished unserved.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

481848.1

**FACTS - GENERAL**

55.     The information that defendants receive concerning a credit card debt is so minimal that defendants cannot lay the foundation for and attach an account history or similar business record to their complaints.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

56.     As of late 2007, NCC was filing about 1,000 consumer collection cases per month in Cook County, Illinois alone, and additional cases in DuPage and other counties. MFLLC was filing cases at a similar rate. Other cases are filed in the name of MCM (over 1,000 during 2007 in Cook County, Illinois alone).

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

57.     On information and belief, Encore purchases the time-barred debts, transfers them to NCC, MFLLC and other subsidiaries for the purpose of suit, and funds such activities.

**ANSWER:**     Defendant admits that Defendant Encore Capital Group, Inc. secures funds from investors and lenders for the purpose of purchasing debts to which various subsidiaries and affiliates of Encore take title.  Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

58.     On information and belief, each of these filings had attached a "Form 409" affidavit similar to those in Exhibits B-C and containing the same statements quoted above.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

59.     Each of these affidavits was prepared in the same manner by an employee of MCM who had no personal knowledge of any facts relating to the debt.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

60.     On information and belief, defendants arrange for MCM to have minimal net worth, in an attempt to insulate themselves from the consequences of their conduct.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

61.     The purpose of the affidavits was to facilitate the ministerial entry of a default judgment if the defendant failed to appear in response to either real or "sewer" service.

**ANSWER:**     Defendants denies the allegations contained in this paragraph.

62.     It is the policy and practice of defendants to nonsuit cases in which the consumer does not default or agree to pay.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

63.     On information and belief, one or more officers or in-house attorneys of Encore was aware of the "Form 409" affidavits as a result of prior litigation and allowed their use to continue.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

64.     Plaintiff Sylverne's claim herein is based solely on the 2007 affidavit, the earlier one being referred to in order to show the inconsistencies with the 2007 affidavit. Plaintiff Davis' claim is based on the motion for entry of judgment received in 2007.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and, therefore, neither admits nor denies the same.

## CLASS ALLEGATIONS

65.     Plaintiffs bring this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

**ANSWER:**     Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but

denies that a class exists or that one should be certified.

66.     The class consists of (a) all natural persons (b) sued in the name of NCC or MFLLC or MCM (c) in an Illinois court (d) where a "Form 409" affidavit was attached to the complaint, and (e) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**ANSWER:**     Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but

denies that a class exists or that one should be certified.  Further answering, Defendant denies the

remaining allegations contained in this paragraph.

67.     The class members are so numerous that joinder is impracticable.

481848.1

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified.  Further answering, Defendant denies the remaining allegations contained in this paragraph.

68.    On information and belief, there are more than 50 natural persons sued in the name of NCC or MFLLC or MCM in an Illinois court where a "Form 409" affidavit was attached to the complaint, and the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified.  Further answering, Defendant denies the remaining allegations contained in this paragraph.

69.    Based on an examination of computerized court records, it is estimated that there are at least 10,000 class members.

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified.  Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph and, therefore, neither admits nor denies the same.

70.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

   a.    Whether defendants have a practice of filing false "Form 409" affidavits.

   b.    Whether such practice violates the FDCPA;

   c.    Whether such practice violates the Illinois Collection Agency Act.

481848.1

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Further answering, Defendant denies the remaining allegations contained in this paragraph.

71.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Further answering, Defendant denies the remaining allegations contained in this paragraph.

72.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified. Further answering, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs will fairly and adequately represent the interests of the class members and, therefore, neither admits nor denies the same. Further answering, Defendant admits that Plaintiffs' counsel is experienced in class actions and FDCPA litigation, but is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs' counsel is adequate counsel to litigate the present purported class action. Further answering, Defendant denies the remaining allegations contained in this paragraph and any allegation that is contrary to the foregoing.

73.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Many debtors may not realize that their rights are violated.

481848.1

**ANSWER:**    Defendant admits that Plaintiffs purport to bring this action on behalf of a class, but denies that a class exists or that one should be certified.  Further answering, Defendant denies the remaining allegations contained in this paragraph.

### COUNT I - FDCP A

74.    Plaintiffs incorporates paragraphs 1-73 by reference.

**ANSWER:**    Defendant incorporates its answers to paragraphs 1-73 by reference.

75.    The misstatements described above violate the FDCPA as constituting a "false ... representation or means in connection with the collection of any debt" (§ 1692e), a false representation of the "character" of any debt (§1692e(2)(A)), and "use of any false representation ... to collect or attempt to collect any debt ... " (§ 1692e(l0)).

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

WHEREFORE, Defendant requests that this Court enter judgment in favor of Defendant and against Plaintiffs, and that this Court award to Defendant such further and other relief as this Court deems just and appropriate.

### COUNT II - ILLINOIS COLLECTION AGENCY ACT

Count II of Plaintiffs' Complaint is directed against co-defendant Midland Credit Management, Inc. and, therefore, this Defendant makes no response to the allegations contained in that Count.  To the extent an answer is required, Defendant denies all allegations contained in Count II of Plaintiffs' Complaint.

### AFFIRMATIVE DEFENSES

1.    Plaintiffs fail to state a cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, because the "Form 409" affidavits at issue in this case do not contain false or misleading statements.

481848.1

2.     Plaintiffs fail to state a cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, because Defendant did not engage in any debt collection activities.

3.     Plaintiffs fail to state a cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, because Defendant is not a debt collector as defined by the Act.

4.     Assuming Defendant's alleged acts or omissions violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. and Defendant is found to be a debt collector as defined by the Act, both of which Defendant denies, any violation of the Act was not intentional and resulted from a *bona fide* error under 15 U.S.C. § 1692k(c).

5.     Upon information and belief, arbitration is the more appropriate venue for Plaintiffs' claims to be brought, because Defendant may possess certain arbitration rights based on contracts entered into by one or more of the Plaintiffs.

6.     Plaintiffs' claims are barred, in whole or in part, by collateral estoppel.

7.     Plaintiffs' claims are barred, in whole or in part, by *res judicata*.

8.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of litigation privilege.

9.     Plaintiffs' claims are barred, in whole or in part, by the *Rooker-Feldman* doctrine.

10.     Plaintiff Stephanie Sylverne's claims are barred, in whole or in part, pursuant to a prior Confidential Settlement Agreement and Release of Claims.

WHEREFORE, Defendant requests that this Court enter judgment in favor of Defendant and against Plaintiffs, and that this Court award to Defendant such further and other relief as this Court deems just and appropriate.

481848.1

Respectfully submitted,

**Midland Funding LLC, Defendant**

By: */s/ Jason M. Kuzniar* _____
        One of its attorneys

Daniel J. McMahon, Esq.
Jason M. Kuzniar, Esq.
WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER, LLP
120 North LaSalle Street, Suite 2600
Chicago, IL 60602
(312) 704-0550

## CERTIFICATE OF SERVICE

        The undersigned, an attorney, hereby certifies that on April 18, 2008, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and that a true and correct copy was served on the following by CM/ECF Electronic Notification:

Cathleen M. Combs, Esq.                Francis R. Greene, Esq.
(ccombs@edcombs.com)                (fgreene@edcombs.com)

Daniel A. Edelman, Esq.                James O. Latturner, Esq.
(courtecl@edcombs.com)                (jlatturner@edcombs.com)


        _/s/ Jason M. Kuzniar_ _____
        Jason M. Kuzniar

-23-

481848.1